

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

OCT 6 - 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| v. | : | Criminal No. 05-365(TFH)  Sealed |
| | : | |
| JEFFREY CORNELL JOHNSON | : | (UNDER SEAL) |
| Defendant. | : | |

### GOVERNMENT'S PROFFER OF PROOF IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Proffer of Proof in Support of a Defendant's Plea of Guilty to Count One of the Information in the above-captioned matter.

*Elements of the Offense*

The essential elements of the offense of Conspiracy to Distribute and Possess with Intent to Distribute More Than 5 Kilograms of Cocaine Hydrochloride and More Than 50 Grams of Cocaine Base, also known as Crack, in violation of 21 U.S.C. § 846, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) that an agreement existed between two or more persons to commit the crimes of Distribution and Possession With Intent to Distribute More Than 5 Kilograms of Cocaine Hydrochloride and More Than 50 Grams of Cocaine Base, also known as Crack;

(2) that the defendant intentionally joined in that illegal agreement.

See *United States v. Lam Kwong Wah*, 924 F.2d 298, 302-303 (D.C. Cir. 1991); *United States v. Pumphrey*, 831 F.2d 307, 308-309, 265 U.S. App. D.C. 306, 307-308 (D.C. Cir. 1987). These cases hold that the offense of violating 21 U.S.C. § 846, by conspiring to violate federal narcotics laws, does not include an element of commission of an overt act in furtherance of the conspiracy.

Count One of the Information charges that Jefrey Cornell JOHNSON, and others, conspired to distribute and possess with intent to distribute more than fifty (50) grams of a mixture and substance containing a detectable amount of cocaine base, also known as crack, and more than five (5) kilograms of a mixture and substance containing a detectable amount of cocaine hydrochloride.

Thus, in order to make the defendant liable for the sentencing enhancements set out in 21 U.S.C. §§ 841(b)(1)(A)(iii) and 841(b)(1)(A)(ii), the United States would be required to prove beyond a reasonable doubt that the defendant conspired with others to distribute and possess with intent to distribute more than fifty (50) grams of a mixture and substance containing a detectable amount of cocaine base, also known as crack, and the defendant conspired with others to distribute and possess with intent to distribute more than five (5) kilograms of a mixture and substance containing a detectable amount of cocaine hydrochloride during the life of the conspiracy, as charged in the Information -- that is, between November 2003 and September, 2004. *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

## *Penalties for the Offense*

The penalty for conspiring to commit a narcotics offense, in violation of 21 U.S.C. § 846, is the same as that prescribed for the substantive offense, "the commission of which was the object of the . . . conspiracy." In this case, the penalty is the same as for a violation of 21 U.S.C. § 841(a)(1), as set forth in 21 U.S.C. § 841(b)(1)(A)(iii), and (b)(1)(A)(ii). The maximum penalty, therefore, is:

(1)  a term of imprisonment which may not be less than 10 years nor more life;

(2)  a fine not to exceed $4,000,000;

(3)  a term of supervised release of at least 5 years, after any period of incarceration;

(4)  a special assessment of $100.

U.S. Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of for imprisonment and any term of supervised release and/or probation.

### *Factual Proffer*

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following:

1. The investigation in this matter was conducted by the Drug Enforcement Administration (DEA) and the Metropolitan Police Department (MPD), which utilized several investigative methods, including the services of a cooperating individual (CI), consensual monitoring of conversations, an undercover police officer (UC), and an electronic surveillance by means of court authorized wiretaps. Certain events in this conspiracy occurred in the District of Columbia, Maryland, and Virginia, and were the subject of law enforcement surveillance in those jurisdictions including electronic surveillance by means of court authorized wiretaps.

2. From on or about November 2003 and continuing up to on or about October 2004, within the District of Columbia, the State of Maryland, and elsewhere, the defendant, Jeffrey Cornell JOHNSON, knowingly and intentionally conspired and agreed with a number of persons known and unknown to the government, to distribute and possess with intent to distribute mixtures and substances containing more than five (5) kilograms of cocaine hydrochloride and more than fifty (50) grams of cocaine base, also known as crack.

3. The principal object of the conspiracy was to make money and illicit profits for its leaders, members, and associates from the distribution and the possession with the intent to distribute cocaine hydrochloride and cocaine base, commonly known as crack cocaine.

4.      During the course of the conspiracy, and to effect its objects, Mr. JOHNSON acquired cocaine hydrochloride several times a month, in amounts in excess of an eighth (1/8) of a kilogram, from Edward PAYNE, and from Gary ROSS through Mr. PAYNE, and others.

5.      During the course of the conspiracy, and to effect its objects, Mr. JOHNSON *and his coconspirators* distributed and possessed with intent to distribute more than 5 kilograms and less than 15 kilograms of cocaine hydrochloride.

6.      For example, during the course of the conspiracy, and to effect its objects, on June 7, 2004, Mr. JOHNSON left his residence at 12523 Tove Road, Clinton, MD, and drove his car drove to the area of T and T Carryout located off Kenilworth Avenue, Capitol Heights, MD. This area is known as an open-air drug market and is used by drug traffickers because the location borders Washington, DC and the traffickers cross back and forth into Washington, DC or PG County depending on police activity. Mr. JOHNSON went to the T and T Carryout to conduct a drug deal with Mr. PAYNE.

7.      For example, during the course of the conspiracy, and to effect its objects, on July 31, 2004, Mr. JOHNSON told Mr. PAYNE that he wanted a "Reggie Miller." A "Reggie Miller" is a "street" term for 31 grams of cocaine. The term is based on National Basketball Association (NBA) star Reggie Miller's uniform number. During a subsequent conversation, Mr. JOHNSON indicated that he wanted a "62", meaning 62 grams of cocaine. Mr. JOHNSON further added that he wanted a "31" for the other person. Mr. JOHNSON and Mr. PAYNE agreed to meet at 6:00 p.m. to consummate the transaction. Later, Mr. JOHNSON and Mr. PAYNE met at the Iverson Mall in Temple Hills, Maryland.

8.      For example, during the course of the conspiracy, and to effect its objects, on August 5, 2004, Mr. JOHNSON spoke with Mr. PAYNE, and asked for four "Reggie Miller's" (124 grams).

9.   During the course of the conspiracy, and to effect its objects, Mr. JOHNSON possessed with the intent to distribute crack cocaine. For example, on September 29, 2004, a search warrant was executed at Mr. JOHNSON's residence. Law enforcement recovered, among other things, a Ruger handgun and approximately 35 grams of crack. Mr. JOHNSON admitted to being a drug dealer. Mr. PAYNE was Mr. JOHNSON's illegal narcotics supplier.

### *Limited Nature of Proffer*

This proffer of evidence is not intended to constitute a complete statement of all facts known by Mr. JOHNSON but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. Mr. JOHNSON has provided additional information about the conspiracy to the United States, which is not contained herein. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged crime of conspiracy to distribute and possess with intent to distribute (1) a mixture and substance containing cocaine base also known as crack, a Schedule II narcotic controlled substance, and the amount of said mixture and substance was 50 grams or more, and (2) a mixture or substance containing cocaine hydrochloride, a Schedule II narcotic controlled substance, and the amount of said mixture and substance was 5 kilograms or more.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

BY: _____
ARVIND LAL
Assistant United States Attorney

*Defendant's Acceptance*

I have read the five (5) pages which constitute the government's Proffer of Proof and have discussed it with my attorney.

I fully understand this proffer and agree to it without reservation.

I do this voluntarily and of my own free will, intending to be legally bound.

No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 10/6/05

_Jeffrey Cornell Johnson_
JEFFREY CORNELL JOHNSON
Defendant

*Attorney's Acknowledgment*

I have read each of the five (5) pages which constitute the government's Proffer of Proof, reviewed them with my client, and discussed the provisions of the proffer with him, fully.

These pages accurately and completely set forth the government's proof as I understand it.

Date: 10/6/05

JAMES W. BEANE, JR., ESQUIRE
Attorney for the Defendant